IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-154-F

| | |
|---|---|
| ROSE M. ROUNDTREE, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-15, -17] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Rose M. Roundtree ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant filed applications for a period of disability, DIB, and SSI on April 17, 2012, alleging disability beginning June 1, 2010. (R. 36, 287-98). The claim was denied initially and upon reconsideration. (R. 36, 75-147). A hearing before an Administrative Law Judge ("ALJ") was held on November 3, 2013, at which Claimant, represented by counsel, and a vocational expert ("VE")

appeared and testified. (R. 50-74). On January 31, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 33-49). The Appeals Council granted Claimant's request for review on April 23, 2015, but indicated that it intended "to modify Finding 5 only to clarify that [Claimant's] residual functional capacity is a range of light work rather than a range of medium work" and to otherwise adopt the ALJ's findings and conclusion that Claimant was not under a disability. (R. 283-86). The Appeals Council provided Claimant an opportunity to respond prior to issuing a final decision. *Id.* On August 5, 2015, the Appeals Council issued an unfavorable decision. (R. 1-9). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270

2

F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision

3

pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. (R. 45). At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (R. 38). Next, the ALJ determined Claimant had the severe impairments of major depressive disorder, anxiety disorder, and back disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 38-40). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in her activities of daily living and social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation of an extended duration. (R. 39).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium exertional work[1] with the following limitations: reaching overhead on the right only occasionally; avoiding concentrated exposure to hazards such as unguarded machinery and unprotected heights; performing simple routine repetitive tasks with no fast paced work, only brief and superficial contact with others, and no more than concrete judgment required. (R. 40-44). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely credible. (R. 43). At step four, the ALJ concluded Claimant is unable to perform any past relevant

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

work. (R. 44). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 44-45).

Claimant alleges the following errors by the ALJ: (1) failure to account for, in the hypothetical to the VE, her moderate limitation in concentration, persistence, or pace; and (2) failure to give controlling weight to the opinion of her treating physician. Pl.'s Mem. [DE-16] at 10-18.

## V. DISCUSSION

### A. The ALJ's Findings Related to Claimant's Moderate Limitation in Concentration, Persistence, or Pace

Claimant contends that the ALJ failed to account for, in the hypothetical to the VE, her moderate limitations in concentration, persistence, or pace.[2] *Id.* at 10-15. Defendant contends that the ALJ appropriately expressed Claimant's moderate limitation in concentration, persistence, or pace in the hypothetical to the VE. Def.'s Mem. [DE-18] at 5-10. The undersigned agrees with Defendant that the ALJ's hypothetical to the VE appropriately conveyed Claimant's moderate limitation in concentration, persistence, or pace.

In *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the

---

[2] Claimant accurately notes that the ALJ erred in stating Claimant was capable of medium exertion level work, but relying on the VE's testimony that Claimant could perform other work in the economy that was light in exertion level. Pl.'s Mem. [DE-16] at 12. However, the Appeals Council corrected this error by clarifying Claimant's RFC was at the light exertion level rather than medium (R. 4), and, therefore, the ALJ's error in this regard is not at issue here.

ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court also indicated that there could be instances where a limitation in concentration, persistence, or pace does not affect the Claimant's ability to work and would be appropriately excluded from the RFC. *Id.* In such circumstances, however, an explanation from the ALJ is required. *Id.*

Here, in assessing Claimant's ability to maintain "concentration, persistence, or pace," the ALJ found Claimant had demonstrated a decreased ability in attention and concentration. (R. 39). As a result, in the RFC and hypothetical to the VE, the ALJ imposed the following restrictions in addition to limiting Claimant to simple, routine, and repetitive tasks: no fast paced work, only brief and superficial interactions with others, and no more than concrete judgment. (R. 40, 71-72). These limitations on task complexity, interaction with others, and the pace of work, are sufficient to address Claimant's moderate limitation in maintaining attention and concentration. *See, e.g., Reiser v. Colvin*, No. 5:14-CV-850-FL, 2016 WL 1183092, at *8 (E.D.N.C. Mar. 28, 2016) (finding the ALJ's inclusion of a limitation to only occasional contact with coworkers and the general public in the RFC addressed claimant's moderate difficulties in concentration and persistence); *Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015) (unpublished) (finding limitation "to performing simple, routine, repetitive tasks with only occasional contact with the general public in an environment with few workplace changes" sufficiently accounted for difficulties with concentration and persistence but not pace); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (unpublished) (distinguishing *Mascio* where the ALJ limited claimant to "simple, repetitive, routine tasks in a stable work environment at a nonproduction pace with only occasional public contact," accounting for limitation in concentration and persistence

6

by restricting her to a stable work environment with only occasional public contact). This case is distinguishable from *Mascio*, because here the ALJ did not simply limit the Claimant to simple, routine, repetitive tasks, but added additional limitations to account for her difficulties in maintaining attention and concentration, and Claimant has not demonstrated how these additional restrictions are inadequate. Accordingly, the ALJ properly accounted for Claimant's moderate difficulties in maintaining attention and concentration in the hypothetical to the VE and the RFC.

**B.      The ALJ's Consideration of Dr. Artis's Medical Source Statement**

Claimant contends the ALJ should have given controlling weight to the medical opinion of Dr. Artis, Claimant's treating psychiatrist. Pl.'s Mem. [DE-16] at 15-18. Specifically, Claimant takes issue with the ALJ's finding that Dr. Artis's conclusion that Claimant would miss more than three days of work per month was not supported by Dr. Artis's treatment notes or other record evidence. *Id.* at 17-18. Defendant contends the ALJ correctly evaluated Dr. Artis's opinion and the ALJ's findings in this regard are supported by substantial evidence in the record. Def.'s Mem. [DE-18] at 10-13. The undersigned agrees with Defendant that the ALJ's evaluation of Dr. Artis's opinion was appropriate and supported by substantial evidence.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2),

7

416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence").

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), the weight afforded such opinions must nevertheless be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (unpublished) (citations omitted).

Dr. Artis began treating Claimant in 2012 and treated Claimant for approximately 15 months

8

before issuing a Medical Source Statement ("MSS") on October 31, 2013. (R. 465-69). When Dr. Artis first saw Claimant in January 2012, she was diagnosed with bipolar and anxiety disorder and had run out of her medication, but Dr. Artis described her as "stable[,] . . . very pleasant, answers questions appropriately and had good eye contact with a normal affect[,] [a]lthough . . . she does comment regarding some depressive symptoms and mood variations." (R. 395-96). Dr. Artis prescribed inexpensive medications, because cost was an issue for Claimant, and scheduled her for follow-up in a month. (R. 396). In February 2012, Claimant saw Dr. Artis's physician's assistant ("PA") and reported not sleeping well and experiencing crying spells, but her mental status examination was normal and she was continued on her medication and offered Valium. (R. 394). The following month, Claimant again saw the PA for medication management. (R. 393). She was very talkative and indicated Tegretol was not stabilizing her mood, although her mental status examination was normal. *Id.* Tegretol was discontinued and she was started on Abilify with other medications continued. *Id.* Claimant returned to see the PA in May 2012 for medication management, and her dosage of Wellbutrin was increased due to her reports of continued crying spells. (R. 426).

In July 2012, Claimant saw Dr. Artis for medication follow-up. (R. 429). Claimant indicated she had been under increased stress due to family issues and requested her Klonopin be increased. *Id.* Her mental status examination was normal and Dr. Artis assessed a Global Assessment Functioning score ("GAF") of 50, noting Claimant remained stable overall. *Id.* Dr. Artis denied the request to increase Klonopin, prescribed Wellbutrin (subsequently changed to Prozac due to cost), and counseled Claimant on stress management and "not to depend so much on medications to take away her every complaint." *Id.* Dr. Artis saw Claimant for medication management follow up on

August 30, 2012, and Claimant stated she was doing well and "just has some personal stressors involving some insurance." (R. 450). Her mental status exam, including attention and concentration, was normal and her medications were continued. *Id.* In December 2012, Claimant saw the PA and reported that she had been out of her medication for a while, was having difficulty caring for her ill mother and two intellectually disabled brothers, and was experiencing crying spells. (R. 435). Lamictal was added for her mood swings. *Id.* In January 2013, Claimant returned to the PA for medication management and reported being stressed out over family issues, that she had no electricity or running water, and that she was still having crying spells. (R. 434). The PA assessed a GAF of 59 and increased her dosage of Klonopin and Prozac. *Id.* Claimant's Prozac was increased again by the PA in February 2013 to address continued crying spells. (R. 461-63). In March 2013, Claimant reported feeling sad and tearful and that her son was in the ICU due to illness. (R. 464). The PA counseled her regarding normal reactive depression, and she was given a sample of Abilify. *Id.* In April 2013, Dr. Artis saw Claimant again for medication management. (R. 458-60). Claimant reported "feeling much better," that her crying had stopped, and that Abilify was helping, and Dr. Artis indicated that her mental status examination was normal, her condition was stable and fair, and her medications were continued. (R. 458-59).

On October 31, 2013, Dr. Artis completed the MSS. (R. 465-69). Dr. Artis listed Claimant's psychiatric diagnosis as Major Depressive Disorder/PTSD with a GAF of 54. (R. 465). Dr. Artis indicated Claimant's symptoms were as follows: poor memory; sleep disturbance; emotional lability; anhedonia (or pervasive loss of interest); feelings of guilt/ worthlessness; difficulty thinking or concentrating; suicidal ideation or attempts; social withdrawal or isolation; blunt, flat, or inappropriate affect; decreased energy; generalized persistent anxiety; and somatization unexplained

10

by organic disturbance. *Id.* Dr. Artis noted that Claimant's mental status examinations were normal but that she had clinical symptoms of depression, anhedonia, sleep disturbance, guilt feelings, and thoughts of death, that her medications caused fatigue, drowsiness, and impaired cognitive abilities, and that her prognosis was good. (R. 466). Dr. Artis indicated he expected Claimant would be absent from work more than three times a month due to her impairments and that she was moderately impaired in her ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, i.e., two hour segments, to complete a normal workday and to perform at a consistent pace without unreasonable periods of rest, to accept instruction and respond appropriately to criticism from supervisors, to get along with co-workers or peers, to be aware of normal hazards and take precautions, and to set realistic goals or make plans independently. (R. 467-68). Dr. Artis further suggested Claimant would "often" have deficiencies in concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner. (R. 468).

The ALJ summarized Claimant's treatment history with Dr. Artis and the PA, as well as Dr. Artis's MSS. (R. 41-42). The ALJ accepted some of Dr. Artis's opinions, which are reflected in the limitations in Claimant's RFC, such as the need to avoid exposure to hazards and limits on task complexity, interaction with others, and the pace of work. (R. 42). However, the ALJ did not credit Dr. Artis's opinion that Claimant would miss more than three days of work per month or that she would often have deficits in concentration, persistence, or pace. *Id.* The ALJ found these conclusions unsupported by Dr. Artis's treatment notes or other record evidence. *Id.* The ALJ found that Claimant's major depressive disorder improved and that she was stable with medication, and also noted that Claimant exhibited consistently normal mental status examinations, including

11

attention and concentration. (R. 43). The ALJ's findings in this regard are supported by substantial evidence of record, specifically the treatment notes of Dr. Artis and the PA summarized above. (R. 393-96, 426, 429, 434-35, 450, 458-64). Where a treating physician's opinion is inconsistent with his own treatment notes and other evidence of record, as is the case here, the ALJ may give the opinion limited weight. *See Dunn v. Colvin*, 607 F. App'x 264, 269 (4th Cir. 2015) (unpublished) (citing *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014)); *Mery v. Colvin*, No. 7:15-CV-104-FL, 2016 WL 4540815, at *8 (E.D.N.C. Aug. 30, 2016) (unpublished) (finding no error in the ALJ's assignment of little weight to portions of treating physician's opinion that were inconsistent with the physician's treatment records). "An ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998)." *Dunn*, 607 F. App'x at 267. Finally, although Claimant suggests that Dr. Artis's opinions are supported by the findings of the state agency medical consultants that Claimant is moderately limited in her ability to complete a normal workday and workweek, or to perform at a consistent pace, due to her psychologically based symptoms, Pl.'s Mem. [DE-16] at17, the state agency consultants concluded Claimant's limitations did not preclude her from performing simple work in a low stress setting. (R. 82-88, 138-40). Accordingly, where the ALJ appropriately evaluated Dr. Artis's opinion and provided sufficient reasons for his conclusions that are supported by substantial evidence, there is no error.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-15] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-17] be ALLOWED, and the final decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **December 20, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and**

Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 6th day of December 2016.

                                      Robert B. Jones, Jr.
                                      United States Magistrate Judge